UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GREGORY P. HARHAY and     )
ANNE E. HARHAY,           )
        Plaintiffs        )
                          )
            v.            )  CIVIL ACTION NO. 08-CV-30229-MAP
                          )
NOAH H. STARKEY and       )
GERTRUDE M. STARKEY,      )
        Defendants        )


MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS AND
PLAINTIFFS' MOTION FOR RECONSIDERATION
(Dkt. Nos. 138 and 144)

May 10, 2010

PONSOR, D.J.

## I. INTRODUCTION

In Act I, Scene 2, of Shakespeare's play, Hamlet describes his relationship with his stepfather as a "little more than kin and less than kind."  This litigation exemplifies the degree of venom, and utter confusion, that can arise from disputes among family members.  It also provides an example of how judicial processes can be abused when family rancor threatens to demand more than its fair share of the court's time.

Siblings Gregory P. Harhay and Anne E. Harhay ("Plaintiffs") filed suit in December 2008, alleging that their sister Gertrude M. Starkey and her husband Noah H. Starkey ("Defendants") swindled them of their family

inheritances by abusing their positions as executrix and counsel for the Estates of their aunt Anne Marie D'Amour, their mother Gertrude Harhay, and a second aunt Yvette Therese D'Amour.  Plaintiffs further alleged that Defendants misappropriated Gertrude Harhay's assets during her lifetime by using an allegedly forged Power of Attorney.  Defendant Gertrude M. Harhay is proceeding pro se; Defendant Noah H. Harhay has been, for reasons detailed below, defaulted.

This memorandum will address two motions.  Defendant has moved to dismiss the complaint in its entirety on the ground that the litigation falls within the "probate exception" to federal subject matter jurisdiction or, in the alternative, that Plaintiffs lack standing to assert their claims.  (Dkt. No. 138).  For the reasons set forth below, this motion will be denied.

In the second motion, Plaintiffs have moved for reconsideration of this court's March 31, 2010 order denying, without prejudice, their motion for default against the remaining undefaulted Defendant Gertrude Starkey for repeatedly failing to comply with discovery orders.  (Dkt. No. 144.)  This motion will be allowed.  Defendant's failure to comply completely with this court's most recent order is simply the last straw amidst a virtual bale of neglect and intransigence in providing discovery, extending many months.

As the discussion below will clarify, the entry of default does not absolutely foreclose a challenge to individual counts lacking legal foundation or counts as to which the allegations of the complaint fail to state a claim.  With this limitation, a default as to liability will enter, and the case will be referred to Magistrate Judge Kenneth P. Neiman for a hearing on damages to be assessed against both Defendants.

## II. <u>FACTS</u>

The labyrinthine procedural background of this case must, unfortunately, be explored in detail to understand the court's reluctant determination that, at this point, a default is not only justified but unavoidable.

Plaintiffs' complaint was filed on December 4, 2008. As will be discussed further at the conclusion of this memorandum, the pleading is somewhat ungainly and may include some purported causes of action with dubious legal or factual support.  Its essential purport, however, was clearly set out in claims, for example, for conversion, fraud, negligence, and breach of fiduciary duty.  In accordance with the court's usual practice, the parties were promptly referred to Magistrate Judge Kenneth P. Neiman for a pretrial scheduling conference pursuant to Fed. R. Civ. P. 16.  On February 27, 2009, Magistrate Judge Neiman entered a

scheduling order for the completion of discovery.

With remarkable rapidity, the discovery process devolved into contentiousness among the parties, particularly on the part of Defendants.[1]  On February 18, 2009, Plaintiffs served Defendants with a first set of interrogatories and requests for production of documents. On March 19, 2009, Gertrude Starkey responded to Plaintiffs' request by objecting "to each and every discovery request (whether interrogatory or request for production) made by the plaintiffs" on a number of grounds, including that Plaintiffs' counsel had failed to arrange for a discovery conference, and that Plaintiffs had failed to provide certain disclosures under Rule 26.  (Dkt. No. 18, Ex. A.) On May 20, 2009, Plaintiffs filed a motion to compel Defendant to provide responses to their discovery requests, which Judge Neiman allowed on June 2, 2009.  Finding Defendant's arguments unconvincing, Judge Neiman ordered her to fully respond, without interposing the same objections

---

[1] In the interest of fairness, it must be noted that Plaintiffs have also been the subject of a modest portion of discovery-related motions in this litigation.  The general tenor of this litigation has become so quarrelsome as to prompt the magistrate judge to issue a standing order prohibiting either party from filing discovery motions without first obtaining leave of court.  However, the degree of recalcitrance and neglect exhibited by both Defendants here finds no comparison in Plaintiffs' behavior.

previously raised, no later than June 15, 2009.

On the same day the court issued its order, Plaintiffs filed a motion to compel discovery from Defendant Noah Starkey. (Dkt. No. 21.) Noah, like his co-defendant (and on the same grounds), had refused entirely to respond to Plaintiffs' February 18, 2009 discovery request. (Dkt. No. 22, Ex. A). Notwithstanding Judge Neiman's prior rejection of Defendants' procedural objections, Defendant opposed Plaintiffs' motion to compel, on the ground that Plaintiffs' alleged failure to comply with procedural requirements precluded them taking any written discovery. (Dkt. No. 24.) On June 16, 2009, Judge Neiman allowed Plaintiffs' motion and ordered Defendant to fully respond to Plaintiffs' discovery requests no later than June 26, 2009.

When Gertrude Starkey failed to provide responses as required by Judge Neiman's June 2, 2009 Order, Plaintiffs filed a first motion for contempt against her. (Dkt. No. 25.) On June 23, 2009, Gertrude opposed the motion arguing that she had not received a copy of the court's June 2 Order until June 15, 2009. (Dkt. No. 26.) Judge Neiman, concluding that the court's ruling on Plaintiffs' Motion to Compel vis-a-vis Defendant Gertrude Starkey had been mailed late, ordered her to comply with the court's prior ruling no later than July 6, 2009.

On July 10, 2009, Plaintiffs filed a second motion for contempt against Gertrude Starkey alleging that she had again failed to provide responses as ordered.  (Dkt. No. 31.)  In their motion, Plaintiffs stated that Noah Starkey, on behalf of Gertrude Starkey, delivered "a bucket of papers" to the office of Plaintiffs' counsel on June 6, many of which "were still in envelopes, without any organization or order" and which, as a whole, were incomplete.  Id. at 1-2.  Plaintiffs' also noted Gertrude Starkey's "odd and unacceptable behavior," which allegedly included "harassing and inappropriate calls" made to Plaintiffs, their counsel, and their counsel's family members.  Id. at 3-4.

On July 29, 2009, Judge Neiman entered an order granting, in part, Plaintiffs' Motion for Contempt.  The order that issued prohibited Gertrude Starkey from having any contact with Plaintiffs, either directly or indirectly, except through their counsel and required her "to give Plaintiffs' counsel reasonable advanced notice should she wish to arrange for the delivery of any further documents." Otherwise, Plaintiffs' motion was denied.  Recognizing Plaintiffs' frustration in receiving documents in a disordered state, the court found it impossible, on the basis of Plaintiffs' motion, to understand with precision which document requests Plaintiffs found insufficient or

why.

Meanwhile, on June 29, 2009, Plaintiffs filed a first motion for contempt against Noah Starkey for failing to comply with the court's June 16, 2009 Order.  (Dkt. No. 27.) On July 27, 2009, Judge Neiman granted the motion and ordered Defendant (1) to reply to discovery requests no later than August 4, 2009, (2) to avoid having any further contact, either directly or indirectly, with Plaintiffs except through their attorney, and (3) to pay Plaintiffs fees and expenses incurred in filing their motion.

On August 5, 2009, counsel for Plaintiffs' filed a Certificate of Notice stating that Noah Starkey had failed to comply with the Court's July 27 Order.  (Dkt. No. 35). On August 10, 2009, counsel for Plaintiffs submitted an Affidavit in Support of Schedule of Fees Relative To Motion For Contempt that was approved by Judge Neiman on August 24, 2009, and the court ordered Noah Starkey to pay $350.00 to Plaintiffs' counsel no later than September 4, 2009.  When Defendant failed to pay Plaintiffs as ordered, Plaintiffs filed a second Certificate of Notice of Non-Compliance. (Dkt. No. 47.)

On September 4, 2009, Plaintiffs filed a Motion for Default Judgment against Noah Starkey, citing his continued refusal to provide responses to discovery requests or to pay

fees, despite multiple orders to do so.  (Dkt. No. 48.)  On
September 14, 2009, Judge Neiman entered an order requiring
Noah Starkey to file a response to Plaintiffs' Motion for
Default Judgment no later than September 22, 2009 and to
appear in court on October 1, 2009 to show cause why he
should not be held in contempt.  When Defendant failed to
appear as ordered on October 1, the court ordered entry of
default.  (Dkt. No. 56).

During this time, Plaintiffs served Defendant Gertrude
Starkey with a notice of deposition accompanied by a request
for the production of many of the same documents they had
been seeking since February of 2007.  Among the documents
listed were a number of consecutive account statements from
bank accounts held by Defendant from January 1, 1999 onward.
(Dkt. No. 70, Def.'s Mot. For Protective Order, Ex. A.)  On
October 16, 2009, Defendant moved for a protective order
excusing her from having to produce the documents.  (Dkt.
No. 70.)  On October 20, 2009, the Magistrate Judge denied
Defendant's motion with respect to the production of
documents and ordered that the deposition go forward as
scheduled on October 26, 2009.  Defendant appeared at her
deposition on October 26 but failed to produce all of the
bank statements requested.

On November 10, 2009, Plaintiffs again moved to have

8

Defendant held in contempt, arguing that her failure to produce the bank documents violated the court's October 20, 2009 order.  (Dkt. No. 90.)  The Magistrate Judge, apparently construing Plaintiffs' motion for contempt as a motion to compel production, issued an order on November 30, 2009, requiring Defendant to produce the requested the missing bank statements no later than December 18, 2009. The Order provided that, in the event that particular account statements were unavailable to Defendant, Defendant was to provide the court with an affidavit detailing the efforts undertaken to obtain the documents and the reasons why such efforts failed.

When Defendant failed to respond by December 18 as ordered, Plaintiffs moved for sanctions and requested that the court enter default judgment against Defendant for failure to comply with the Magistrate Judge's November 30, 2009 order.  (Dkt. No. 115.)  Defendant opposed the motion, alleging, inter alia, that she had never received a copy of the November 30, 2009 order.  (Dkt. No. 128.)

The parties appeared for a hearing before the undersigned on March 29, 2010, at which time the court heard argument on Plaintiffs' motion.  At the hearing, the court, again, confirmed with Defendant her mailing address and cautioned that she was running out of opportunities to come

into compliance with the court's discovery orders.   On March
30, 2010, the court issued an order denying Plaintiff's
Motion for Default, without prejudice, on condition that
Defendant comply fully with the November 30, 2009 order no
later than April 9, 2010.   On March 31, 2010, the court
entered a further scheduling order clarifying that a failure
to strictly comply would result in reconsideration and
allowance of Plaintiff's Motion for Default.   The Order
provided that:

> To comply fully, Defendant is ordered to assemble a
> complete packet of all documents ordered produced by
> Judge Neiman and convey them to Plaintiff's counsel
> by April 9, 2010, upon pain of default.   It shall
> not excuse failure to comply that Defendant is of
> the opinion that she has previously conveyed any
> particular document to Plaintiff's counsel.   The
> packet of materials must contain all documents
> ordered to be produced by Judge Neiman on November
> 30, 2009.

(Dkt. No. 143.)

On April 9, 2010, Plaintiffs renewed their motion for
default judgment asserting that, despite this court's
repeated admonishments, Defendant had still not strictly
complied the November 30, 2009 and March 31, 2010 Orders.
(Dkt. No. 144.)   Defendant filed an objection to Plaintiffs'
renewed motion stating that she had "used her best efforts"
to obtain copies of the bank statements ordered produced but
that she was unable to obtain any statements predating

January 1, 2003 because bank system limitations precluded access to documents older than seven years. (Dkt. No. 146.) Defendant further stated that she had produced all other bank statements required by the two discovery orders. A close review of the docket reveals that, even excusing production of documents predating January 1, 2003, Defendant has not fully complied with this court's March 31, 2010 order. At least one document -- the Woronoco Bank statement dated November 13, 2004 -- still remains unproduced without explanation.

### III. <u>DISCUSSION</u>

A. <u>Defendant's Motion to Dismiss</u>.

Before addressing the merits of Plaintiffs' motion for default, it is necessary to address Defendant's motion to dismiss. Defendant first argues in her motion that this court lacks jurisdiction over the subject matter of this case under the so-called "probate exception" to federal subject matter jurisdiction. (Dkt. No. 138.) The probate exception is a judge-made doctrine requiring a federal court to refrain from asserting jurisdiction where a federal suit is likely to "interfere with the probate proceedings." <u>See Markham v. Allen</u>, 326 U.S. 490, 494 (1946). For many years, "just what would constitute 'interference with the probate proceedings' proved notoriously difficult to pin down."

11

<u>Jimenez v. Rodriguez-Pagan</u>, 597 F.3d 18, 24 (1st Cir. 2010)
(internal punctuation omitted).  Recently, however, the
Supreme Court clarified that the scope of the probate
exception is "distinctly limited," extending only to cases
where the federal court is being asked to engage in (1)
"purely" probate matters such as "the probate or annulment
of a will and the administration of a decedent's estate" or
(2) the "dispos[al] of property that is in the custody of a
state probate court."  <u>Marshall v. Marshall</u>, 547 U.S. 293,
310-12 (2006).  Where a party seeks federal adjudication of
matters outside these narrow confines (and otherwise within
federal jurisdiction) the probate exception is not a bar.
<u>Id</u>. at 312.

     Defendant argues that Plaintiffs' claims fall within
the probate exception because they are "based entirely upon
their claimed interests as beneficiaries and/or heirs at law
in three estates."  (Dkt. No. 137, Def.'s Mem. in Supp. of
Mot. to Dismiss at 8.)  This argument lacks merit.  While it
is noteworthy that this lawsuit follows significant and
apparently still pending actions by the probate court,
<u>Marshall</u> makes clear that the probate exception cannot be
used "to dismiss 'widely recognized tort[s]' such as breach
of fiduciary duty or fraudulent misrepresentation merely
because the issues intertwine with claims proceeding in

12

state court." <u>Lefkowitz v. Bank of N.Y.</u>, 528 F.3d 102, 108
(2d Cir. 2007) (quoting <u>Marshall</u>, 547 U.S. at 312).  All of
Plaintiffs' claims sound in tort and seek an <u>in personam</u>
damages judgment against the Defendants themselves.
Plaintiffs do not seek to administer an estate, probate a
will, or otherwise assume <u>in rem</u> jurisdiction over property
in the custody of a state probate court.[2]  Plaintiffs have
not sought declaratory judgment, disgorgement of particular
assets, or any other remedy that might directly affect a <u>res</u>
in the custody of a state court.  Consequently, this case
does not run afoul of the more limited probate exception set
out in <u>Marshall</u>.  Accord <u>Wisecarver v. Moore</u>, 489 F.3d 747,
750 (6th Cir. 2007) (finding claims for breach of fiduciary
duty and fraud not barred by the probate exception under
<u>Marshall</u>); <u>Jones v. Brennan</u>, 465 F.3d 304, 307-308 (7th Cir.
2006) (same).

    As an alternative ground for dismissal, Defendant
argues that Plaintiffs lack "standing" to bring the present
action.  She first asserts that Massachusetts law
exclusively vests the right to sue for the benefit of an

_____

    [2] It is significant that Plaintiffs' claims would not
be cognizable by a Massachusetts probate court.  <u>See</u>
<u>Davignon v. Clemmey</u>, 176 F. Supp. 2d 77, 86 (D. Mass. 2001)
(citing Mass. Gen. Laws ch. 215, §§ 3, 6) (noting that
"[t]he Probate Court does not have jurisdiction to hear tort
actions or to award damages").

estate in its fiduciary, generally the executor or

administrator.  This argument, which may be more precisely

characterized as a challenge to Plaintiffs' capacity to sue

under Fed. R. Civ. P. 17(b), is unpersuasive for two

reasons.  First, as discussed above, the complaint seeks

money damages for Plaintiffs' own benefit -- not the benefit

of any decedent's estate.  Second, even assuming that a

victory might somehow inure to the benefit of the estates at

issue, Defendant has failed to cite any Massachusetts

authority limiting Plaintiffs' capacity to assert such

claims.[4]  To the contrary, Massachusetts law provides that

where, as here, the fiduciary of an estate is herself a

defendant against whom specific wrongdoing has been alleged,

actions by heirs, legatees and others with "an interest in

the enforcement" of such a claim are favored.  Mass. Gen.

Laws. ch. 230, § 5.  See Labonte v. Giordano, 687 N.E.2d

1253, 1256 (Mass. 1997); Walsh v. Mullen, 50 N.E.2d 1, 3

---

[4] The three statutes Defendant cites are unavailing.
Mass. Gen. Laws ch. 229, § 2, which commits the right to
bring a wrongful death suit to the executor or administrator
of the deceased, is inapposite here because no such claim
has been asserted.  Mass Gen. Laws ch. 197, § 19, concerns
suits in equity brought by a legatee to recover her legacy;
it does not concern executors or administrators, let alone
vest in them any exclusive rights.  Similarly, Mass. Gen.
Laws ch. 204, § 13, which permits, subject to the
authorization of the probate court, the arbitration of
demands in favor of or against an estate by its executor or
administrator, does not purport to establish any exclusive
rights in an executor.

14

(Mass. 1943) (holding that when an administrator is named as a defendant, "[i]t is no valid objection to [a claim] that it was not brought by the administrator").  In sum, Plaintiffs' do not lack capacity to sue.

Also under the heading of "standing," Defendant argues that any claims to property traceable to the late Yvette T. D'Amour should be dismissed for failure to join indispensable parties, namely eight heirs to Yvette T. D'Amour's estate who are not parties to this case. Dismissal for failure to join an indispensable party is governed by Rule 19 of the Federal Rules of Civil Procedure. Acton Co. of Massachusetts v. Bachman Foods, Inc., 668 F.2d 76, 78 (1st Cir. 1982).  Under Rule 19, the party seeking dismissal carries the burden of showing that an absent party is "necessary"[5] and therefore "required to be joined if feasible."  Fed. R. Civ. P. 19(a).  See Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 16 (1st Cir. 2008).  If this burden is met, and if joinder of that party would destroy diversity jurisdiction, Rule 19(b) may be invoked to "determine whether, in equity and good conscience," an action should be dismissed.  Fed. R. Civ. P. 19(b).  See Pujol v.

---

[5] Although use of the term "necessary" alludes to an older version of Rule 19, "many circuits (including this one) continue to cling to the traditional nomenclature." Jimenez, 597 F.3d at 25, n.3.

Shearson/American Express, 877 F.2d 132, 134 (1st Cir.
1989).  The analysis under Rule 19 is fact specific.
Picciotto, 512 F.3d at 16.

Here, Defendant has failed to meet its burden of
showing that the absent heirs are "necessary" under Rule
19(a).  Plaintiffs' claims against Defendant are not rooted
in their expectancies as heirs of Yvette T. D'Amour, but as
beneficiaries of a residual trust, funds from which were
allegedly required to be distributed thirty days after
Yvette T. D'Amour's death.  Because none of the "absent
heirs" are similarly situated in this regard, there is
little potential, as Defendant alleges in her motion, that
multiple lawsuits, asserting the same claims as Plaintiffs,
will expose Defendant to the risk of multiple or otherwise
inconsistent obligations.  Accordingly, Defendant's motion
to dismiss will be denied.[6]


B. Plaintiffs' Motion for Default Judgment.

Defendant's challenge to subject matter jurisdiction
having been resolved, the court turns to Plaintiffs' renewed
Motion for Default.  Rule 37 of the Federal Rules of Civil
Procedure provides that, if a party "fails to obey an order

---

[6] The court also finds baseless Defendant's argument
rooted in Plaintiffs' alleged failure to comply with
disclosure obligations under Fed. R. Civ. P. 26.

to provide or permit discovery," the court may "issue
further just orders" including "rendering a default judgment
against the disobedient party."  Fed. R. Civ. P.
37(b)(2)(A)(vi).

It has been observed that the rendering of default
judgment is a "drastic" sanction because it "runs contrary
to the goals of resolving cases on the merits."  <u>Remexcel
Managerial Consultants, Inc. v. Arlequin</u>, 583 F.3d 45, 51
(1st Cir. 2009).  However, "[t]he law is well established in
this circuit that where a noncompliant litigant has
manifested a disregard for orders of the court and been
suitably forewarned of the consequences of continued
intransigence" the power to levy sanctions such as dismissal
and default judgment are within the wide discretion of the
trial court.  <u>John's Insulation v. L. Addison & Assocs.</u>, 156
F.3d 101, 110 (1st Cir. 1998) (quoting <u>Figueroa-Ruiz v.
Alegria</u>, 896 F.2d 645, 649 (1st Cir. 1990)); <u>United States
v. Klimavicius</u>, 847 F.2d 28, 32 (1st Cir. 1988).

Here, Defendant's long history of neglecting discovery
obligations requires the court to exercise its discretion to
enter a default.  Defendant has repeatedly failed to comply
with court orders, including most recently this court's
order of March 31, 2010, despite being warned time and time

again of the potential consequences of noncompliance.[7]
While a single instance of noncompliance would not
ordinarily result in a default, the docket as a whole
reveals that Defendant's behavior is not an isolated
incident but part of a "continuing saga of dilatory conduct"
that suffices to justify entry of a default.  United States
Freight Co. v. Penn Cent. Transp. Co., 716 F.2d 954, 955 (2d
Cir. 1983).  See Remexcel, 583 F.3d at 52 (affirming a
district court's entry of default where defendants
repeatedly failed to respond to discovery); Brockton Savings
Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 9-12 (1st
Cir. 1985) (upholding default where defendant repeatedly
disobeyed orders to produce documents).

Moreover, in light of the emphatic, deliberate, and
repeated warnings afforded Defendant, it is impossible to
interpret her failure to strictly comply as accidental.  A
sanction less than the one this court explicitly warned
would result from non-compliance in its March 31, 2010 order
would put the Court in the posture of playing "paper tiger,"
See Lemus v. Manhattan Car Wash, Inc., 2010 U.S. Dist. LEXIS
33263 (S.D.N.Y. Mar. 25, 2010), and undermine the purpose of
Rule 37 as a credible deterrent.  NHL v. Metro. Hockey Club,

---

[7] Indeed, the case itself offers the default of
Defendant's co-defendant and spouse Noah Starkey as a
cautionary example of the price of discovery intransigence.

427 U.S. 639, 643 (1976).

The court stresses that its order of default does not entirely strip Defendant of the right to participate in this action.  "[A]n entry of default prevents the defendant from disputing the truth of well-pleaded <u>facts</u> in the complaint pertaining to liability."  <u>Remexcel</u>, 583 F.3d at 52 (quoting <u>Conetta v. Nat'l Hair Care Ctrs., Inc.</u>, 236 F.3d 67, 75-76 (1st Cir. 2001)) (emphasis added).  This does not necessarily preclude Defendant, however, from raising <u>legal</u> objections to claims contained in the complaint by way of a motion brought, for example, pursuant to Fed. R. Civ. P. 12(b)(6).  Thus, notwithstanding entry of default, "a 'defendant may still contest a claim on the ground that the complaint does not allege facts that add up to the elements of a cause of action.'"  <u>Id.</u> (quoting <u>Conetta</u>, 236 F.3d at 76); <u>Gowen, Inc. v. F/V Quality One</u>, 244 F.3d 64, 66-7 (1st Cir. 2001); <u>Bonilla v. Trebol Motors Corp.</u>, 150 F.3d 77, 80 (1st Cir. 1998), cert. denied, 526 U.S. 1098 (1999).  Similarly, a defendant may argue, to the degree it is "facially obvious from the well-pleaded facts of [the] complaint," that the statute of limitations provides a complete defense to a particular claim.  <u>J & J Sports Prods. v. Martinez</u>, 2010 U.S. Dist. LEXIS 36992 (N.D. Cal. Mar. 2, 2010).  Accord <u>Santana-Castro v. Toledo-Davila</u>, 579 F.3d

109, 114 (1st Cir. 2009) (quoting <u>Trans-Spec Truck Serv.,</u>
<u>Inc. v. Caterpillar, Inc.</u>, 524 F.3d 315, 320 (1st Cir.
2008)) (noting that "[a]ffirmative defenses, such as the
statute of limitations, may be raised . . . under Federal
Rule of Civil Procedure 12(b)(6), provided that 'the facts
establishing the defense [are] clear on the face of the
plaintiff's pleadings.'")

    Finally, although a defaulted defendant has no
entitlement to a jury trial with regard to damages, <u>Graham</u>
<u>v. Malone Freight Lines, Inc.</u>, 314 F.3d 7, 16 (1st Cir.
1999), she retains the right to dispute and present evidence
at a hearing regarding the amount of any damages to be
awarded to Plaintiffs.  <u>See</u>, <u>e.g.</u>, Fed. R. Civ. P. 55(b)(2);
<u>Sony Corp. v. Elm State Elecs., Inc.</u>, 800 F.2d 317, 321 (2nd
Cir. 1986); <u>G. & C. Merriam Co. v. Webster Dictionary Co.</u>,
639 F.2d 29, 34 (1st Cir. 1980).

                    IV. <u>CONCLUSION</u>

    For the foregoing reasons, Defendant's Motion to
Dismiss (Dkt. No. 138) is hereby DENIED.  Plaintiffs' motion
for default judgment is hereby ALLOWED.  The Clerk will
enter a default judgment on liability against Defendant.
This case is hereby referred to Magistrate Judge Neiman for
a hearing regarding damages against both defaulted
Defendants.  The current dates for a status conference on

                          20

May 24, 2010, and for trial on June 7, 2010, before this court are hereby vacated.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge