```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS


GREGORY P. HARHAY and    )
ANNE E. HARHAY,          )
        Plaintiffs       )
                         )
            v.           )  CIVIL ACTION NO. 08-CV-30229-MAP
                         )
NOAH H. STARKEY and      )
GERTRUDE M. STARKEY,     )
        Defendants       )
```

### MEMORANDUM AND ORDER REGARDING
### REPORT AND RECOMMENDATION WITH REGARD TO DAMAGES AND
### DEFENDANTS' MOTIONS TO DISMISS
(Dkt. Nos. 161, 162, 166, 167, 177, & 182)

December 30, 2010

PONSOR, D.J.

### I. INTRODUCTION

Sadly, sometimes the division of a family's estate results in the division of the family. Here, Plaintiffs Gregory P. Harhay and Anne E. Harhay are the brother and sister of Defendant Gertrude M. Starkey and the siblings-in-law of Defendant Noah H. Starkey. Noah Starkey, husband of Gertrude, was counsel for the estates of Plaintiffs' and Defendant Gertrude Starkey's aunt Anne Marie D'Amour, their mother (Gertrude Harhay), and a second aunt Yvette Therese D'Amour.

On December 8, 2008, Plaintiffs filed a twenty-three-count complaint against the Starkeys alleging breach of fiduciary duty, intentional misrepresentation, and

conversion.  Defendants, proceeding pro se, responded with a course of passively and actively obstructive conduct, which, combined with their unsupportable positions on the merits, led eventually to both Defendants being defaulted on the issue of liability -- Noah Starkey on October 2, 2009, and Gertrude Starkey on May 10, 2010.[1]  Following these defaults, the case was referred to Magistrate Judge Kenneth P. Neiman for a hearing to assess damages.  On the day of the hearing, Defendants turned up at the clerk's office to file multiple motions to dismiss but made no appearance in Judge Neiman's courtroom to contest Plaintiff's damage evidence.  Defendant's motions to dismiss were referred to Judge Neiman for a separate report and recommendation.

On August 26, 2010, Judge Neiman issued his Report and Recommendation to the effect that Defendants' motions to dismiss be denied and Plaintiffs be awarded certain damages. The recommended damages included, against both Defendants, $80,000 to Plaintiff Anne Harhay from the residual estate of Anne Marie D'Amour; $90,000 to Plaintiff Gregory Harhay from

---

[1] The default rulings followed what Magistrate Judge Neiman described as "generally wasteful and unnecessarily contentious disputes which have been repeatedly brought to the court's attention." (Nov. 24, 2009 Order.)  The default judgments issued upon motion of Plaintiffs after both Defendants repeatedly flouted Magistrate Judge Neiman's clear orders by failing to provide discovery responses and failing to appear at depositions.

the residual estate of Anne Marie D'Amour, and $115,000 to Gregory Harhay representing one half of the value of the mother Gertrude Harhay's house.  Judge Neiman further recommended an award to both Plaintiffs of $16,328.16 in attorney's fees and costs against Defendant Noah Starkey.  Finally, he has included in his report the recommendation that the motions to dismiss filed on the day of the damages hearing be denied.  Defendants have duly objected to all of Judge Neiman's findings and recommendations, and his Report and Recommendation is now before the court.  Upon <u>de novo</u> review, for the reasons outlined below, the court finds the Report and Recommendation entirely correct and well supported and will adopt it.

## II. <u>DISCUSSION</u>

As a threshold matter, the scope of Defendant Gertrude Starkey's objections far exceeds the recommendations of the Magistrate Judge's report.  Indeed, it appears that Defendant has taken this opportunity to object anew to every adverse ruling since the commencement of this lawsuit.  As the rule governing objections makes clear, though, "a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  The court will not repeat in this memorandum rulings already made in response to earlier motions -- these

are in the record -- but will confine its discussion to the recommendations made by Judge Neiman based on the hearing on damages and in regard to the most recently filed motions to dismiss.

    A.    <u>Defendant Noah Starkey's Motions to Dismiss (Dkt. Nos. 166 and 167)</u>.

When last the court addressed these parties, the matters at issue included Defendants' Motions to Dismiss for Lack of Subject Matter Jurisdiction and Plaintiff's Lack of Standing, both of which the court denied. The court again confronts the very same arguments in Defendants' objections to Judge Neiman's recommendation that their second round of motions to dismiss be denied. No matter how many times Defendants offer these arguments, the answers remain the same. For the reasons stated only a few months ago, the court has subject matter jurisdiction and Plaintiffs have standing. <u>See</u> <u>Harhay v. Starkey</u>, 2010 U.S. Dist. LEXIS 45473 (D. Mass. May 10, 2010). The report and recommendation to the effect that these repetitive motions to dismiss be denied will be adopted.

    B.    <u>Remaining Motions to Dismiss (Dkt. Nos. 161, 162, and 177)</u>.

In separate motions, Defendants each argue that most of the counts in the complaint allege injuries that resulted from fraud, yet the complaint fails to allege such fraud

with the particularity required by Fed. R. Civ. P. 9(b). As Judge Neiman noted, however, the complaint's numerous and detailed allegations of fraud render these motions to dismiss meritless. (See, e.g., Dkt. No. 1, Compl. ¶¶ 48, 52, 67-73, 75, 77, 79, 82, 85, 88, 97, 100, 103, 106.)

As to Defendant Gertrude Starkey's remaining motion alleging fraudulent litigation conduct (Dkt. No. 162), Judge Neiman convincingly laid out the myriad reasons why her assertions "even if credited, do not call for the outright dismissal of Plaintiffs' action." (Dkt. No. 182, Report and Recommendation, at 5.)

Judge Neiman's reasoning was sound, and this court will adopt his recommendation to deny all of the remaining motions. (Dkt. Nos. 161, 162, and 177.)

C. Damages.

Defendants object to Judge Neiman's recommendation that damages be awarded to Plaintiffs relating to Anne Marie D'Amour's residual trust and real property owned by Gertrude Harhay. Defendant Noah Starkey additionally objects to the award against him of attorney's fees pursuant to Mass. Gen. Laws ch. 93A.

1. Anne Marie D'Amour's Trust Estate.

Anne Marie D'Amour left a trust in which she bequeathed "twenty-seven and six-tenths percent (27.6%) of said estate

up to the sum of Eighty Thousand Dollars" to Plaintiff Anne Harhay and "thirty-one percent (31%) of said estate up to the sum of Ninety Thousand Dollars ($90,000)" to Plaintiff Gregory Harhay.  (Dkt. No. 160, Ex. 4, at 3.)  These residual gifts were not to be made until thirty days after the death of Anne Marie's sister Yvette because the income and principal of the trust were to be available to Yvette should her own assets be inadequate to cover medical necessities or other care and maintenance.  Anne Marie died on December 30, 1999, and Yvette died on March 7, 2006.

Defendants object to the Magistrate Judge's recommendation that Plaintiffs receive as damages the maximum amounts of $80,000 and $90,000, based on their contention that Yvette entirely depleted Anne Marie's trust estate to cover expenses for her own medical care, leaving nothing in the residual estate for the Harhays.  Because Defendants provided <u>no</u> evidence to support this contention and, in fact, did not raise it until after the Report and Recommendation was issued, Judge Neiman properly, and understandably, concluded that Yvette had no medical needs that required her to withdraw vast sums from Anne Marie's account.  Defendants had an obligation to present their evidence at the hearing before Judge Neiman, and not save their ammunition until <u>after</u> the adverse recommendation

issued.  The court is therefore obliged to ignore Defendants' tardy explanation for the dramatic withdrawals from Anne Marie's estate.

Even if the court were inclined to address Defendants' newly advanced theory regarding the depletion of Anne Marie's trust assets by Yvette, this court nevertheless would draw the same inference as Judge Neiman that Yvette Harhay had no need to invade Anne Marie's account for assistance in paying for her medical care.[2]  Yvette's bank records demonstrate that up until the day before she died, her checking account held $146,752.52.[3]  (Pl. Hr'g Ex. 9.) On the other hand, the balance in Anne Marie's trust account at Merrill Lynch, which Defendant Noah Starkey controlled, was quickly shrinking.  The earliest statement in the record, from April 30, 2001, reflects a total account value of $383,678.27. (Pl. Hr'g Ex. 14.)  By December 31, 2002, the most recent statement in the record, the account's value had decreased to $524.73.  (Id.)  That said, and again with no evidence to the contrary, the court must conclude that Yvette had ample funds of her own to cover medical and other

---

[2] Although Plaintiffs did not raise this argument at the hearing, Judge Neiman touched on it in his Report and Recommendation due to Anne-Marie's instructions that the residual gifts not be distributed until after Yvette's death.

[3] The record is silent regarding a withdrawal of $140,000 on March 6, 2006, the day before Yvette died.

necessities, and at the time of Yvette's death the funds in the account containing Anne Marie's trust proceeds should have been more than sufficient to grant the maximum gifts as described in the trust to Plaintiffs, namely $80,000.00 and $90,000.00.  See Confederated Tribes v. United States, 248 F.3d 1365, 1371 (Fed. Cir. 2001) ("Under trust law generally, a beneficiary is entitled to recover damages for the improper management of the trust's investment assets. . . . [C]ourts attempt to place the beneficiary in the position in which it would have been absent the breach.")

Defendant Gertrude Starkey's protestations that the evidentiary record is insufficient to support the conclusion that she had any control over Anne Marie's account come too late.  "'An entry of default prevents the defendant from disputing the truth of well-pleaded facts in the complaint pertaining to liability.'"  Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 53 (1st Cir. 2009) (quoting Conetta v. Nat'l Hair Care Cntrs., Inc., 236 F.3d 67, 75-76 (1st Cir. 2001)).  The complaint explicitly avers that Defendant Gertrude Starkey acted in a fiduciary capacity and exercised dominion and control over the probate estates at issue.  (Dkt. No. 1, Compl. ¶¶ 17-18.)  Gertrude Starkey's well-supported default on liability forecloses any attempt to contest that allegation now.

Accordingly, as per Judge Neiman's recommendation, the damages against both Defendants will include $80,000 to Plaintiff Anne Harhay and $90,000 to Plaintiff Gregory Harhay, for which Defendants will be jointly and severally liable.

    2. <u>Gertrude Harhay's Real Property</u>.

Gertrude Harhay, the mother of Plaintiffs and of Defendant Gertrude Starkey, owned a home located at 26 John Street, Chicopee, Massachusetts. Plaintiffs testified that their mother's wishes were that, upon sale of the home, half of the proceeds would go to Plaintiff Gregory Harhay and half to Defendant Gertrude Starkey.[4] Instead, Plaintiffs introduced evidence at the hearing that six months prior to Gertrude Harhay's death, Defendants forged her signature on a durable power of attorney and transferred 26 John Street to their daughter and her husband for $125,000. (Pl. Hr'g Ex. 1.) Three years later, on August 29, 2006, Defendants' daughter sold the home for $230,000. (Pl. Hr'g Ex. 8.)

At the damages hearing before Magistrate Judge Neiman, Plaintiffs offered a report of a handwriting expert in support of their allegation that their mother's signature on the power of attorney was forged. (Dkt. No. 160, Ex. 2.)

---

[4] Plaintiffs testified that their mother had already given Plaintiff Anne Harhay an equivalent sum to assist her in purchasing a home.

They also pointed out that the durable power of attorney was witnessed by Defendant Gertrude Starkey and Defendants' son Noah H. G. Starkey.  Although Defendants now question the credibility and methodology of the handwriting expert, their failure to appear before Judge Neiman and offer their arguments at the hearing bars them from litigating this issue at this stage.  See, e.g., Massachusetts v. Hale, 618 F.2d 143, 145 (1st Cir. 1980)(accepting as true plaintiff's claims on damages after defendants failed to appear at the damages hearing); Siber Telecom, Inc. v. Ariana Telcoms., Inc., 201 F. Supp. 2d 187, 189 (D. Me. 2002) (same).  In any event, the expert's report, which Judge Neiman was entitled to accept, confirms that the signature on the durable power of attorney does not match the exemplars of Gertrude Harhay's known signatures.  See Davignon v. Clemmey, 322 F.3d 1, 11 (1st Cir. 2003) (noting that a trial judge is accorded deference in weighing evidence).

Defendants object to Judge Neiman's damages award to Plaintiff Gregory Harhay of one half of the proceeds from the sale of the house on the further ground that, if the signature on the power of attorney was forged, the forged signature renders the 2006 sale to a third party per se invalid.  This is incorrect as a matter of law.  In Massachusetts, "a bona fide purchaser is 'a purchaser for

value in good faith and without notice of any adverse claim.'" Morgan Guaranty Trust Co. v. Third Nat'l Bank, 529 F.2d 1141, 1143 (1st Cir. 1976) (quoting Mass. Gen. Laws ch. 106, § 8-302). Here, with no evidence or even a claim that the 2006 buyers were aware of the circumstances surrounding the fraudulent 2003 transfer, the current owners of 26 John Street need not, as Defendants suggest, be parties to this litigation. Given this, and relying on Plaintiffs' undisputed testimony that their mother intended to divide the proceeds between two of her children, the court will accept Judge Neiman's recommendation that one half of the proceeds of the 2006 sale be included as damages. Therefore, $115,000 will be awarded against Defendants jointly and severally to Plaintiff Gregory Harhay.

    3.    Chapter 93A Damages.

Defendant Noah Starkey objects to the award of attorney's fees against him on the ground that he received no notice of the damages hearing. The court rejects his claim as a ploy used time and again throughout the course of this litigation. His wife, with whom, according to the complaint, he lives, has made no argument that notice to her of the damages hearing was deficient. Moreover, as evidenced by the entry of default against him, Noah Starkey's credibility has been sorely compromised by his

dilatory discovery tactics and his failure to follow numerous direct court orders, be they to appear or to file certain responses.  In sum, the court finds incredible Mr. Starkey's claim that he was unaware of the damages hearing and will adopt Judge Neiman's recommendation of an award of $16,328.16 against Defendant Noah Starkey for attorney's fees and costs relating to the damages hearing.  This amount also includes an award of $1997.50, ordered by Judge Neiman on December 21, 2009, but still as yet unpaid.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the court hereby ADOPTS the Judge Neiman's Report and Recommendation (Dkt. No. 182). Defendant Noah Starkey's Motions to Dismiss (Dkt. Nos. 166, 167 & 177) are hereby DENIED.  Defendant Gertrude Starkey's Motions to Dismiss (Dkt. Nos. 161 & 162) are hereby DENIED. The clerk is ordered to enter judgment for Plaintiffs as follows: $80,000 to Plaintiff Anne Harhay against both Defendants; $205,000 to Plaintiff Gregory Harhay against both Defendants, which includes both his share of the trust and his share of the proceeds of the sale of the house; $16,328.16 to both Plaintiffs against Defendant Noah Starkey.  Plaintiffs' attorney may submit a supplemental application for additional fees and costs, with a supporting affidavit covering the time since his last application, July

4, 2010.  This case may now be closed.

     It is So Ordered.

                              /s/ Michael A. Ponsor
                              MICHAEL A. PONSOR
                              U.S. District Judge